IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

JOHNNY CHAPPELL                                                                                         PLAINTIFF

v.                                            No. 3:09CV00016 JLH

THE BILCO COMPANY                                                                                     DEFENDANT

**OPINION AND ORDER**

Johnny Chappell was discharged by his employer, The Bilco Company, in August 2007. Chappell contends that Bilco's actions violated the Family and Medical Leave Act ("FMLA"), the Arkansas Civil Rights Act ("ACRA"), and 42 U.S.C. § 1981. Chappell filed the present action on November 26, 2008. Pursuant to a court order, he filed an amended complaint on February 1, 2010. Chappell has moved for summary judgment on his FMLA interference claim, and Bilco has moved for summary judgment on all claims. For the reasons stated below, Bilco's motion for summary judgment is granted, and Chappell's motion for partial summary judgment is denied.

**I.**

Plaintiff Johnny Chappell is an African American employee who worked for Bilco in its Truman facility from May 2002 until August 2007. During that time, Chappell worked as a machine operator in the fabrication department. In 2005, Chappell filed a complaint against Bilco, which included a claim under the FLSA. The parties settled that lawsuit in August 2006. In September 2006, Bilco amended its attendance policy. Under the new policy, employees receive "points" for each instance of absence or tardiness. If an employee fails to call in and speak to his supervisor or the plant manager by 8:00 a.m. to report an absence, the employee is assessed three points. Prior to the amendment, employees were permitted to simply leave a message stating that they would be

absent. Under the new policy, employees are not permitted to leave a message. They are required to speak to a supervisor or the plant manager.

Under the attendance policy, discipline occurs in the following steps: An employee who accumulates four points is given formal counseling. Five points or four points reached on more than one occasion result in a written warning. An employee is suspended if he accumulates six points or has another occurrence within ninety days of receiving a written warning. An employee is terminated if he accumulates seven points or has another occurrence within 120 days of suspension. For each thirty-day period worked without an occurrence, one point is deducted from an employee's total. Additionally, no wage increase is granted to any employee with four or more points.

When Bilco changed its attendance policy in 2006, it held a plant-wide meeting to explain the parameters of the new policy and provided a copy of the new policy to employees with their payroll checks. Gordon Bond, Chappell's supervisor, held another meeting with the employees in the fabrication department to explain the new call-in policy. Chappell alleges that Bond told him that he could call in and leave a message if he was going to be absent. Bond denies making that statement to Chappell or any other employee in the fabrication department.

Chappell's mother had surgery on her hip on October 2, 2006, and needed care due to incapacity through October 30, 2006. About a week prior to the surgery, Chappell told Gordon Bond that he needed FMLA paperwork so that he could request leave to care for his mother. Gordon Bond told Chappell that Cyndi Bond, the office supervisor, was not in and that he would have to get the paperwork from her. Chappell testified that he found out on October 1, 2006, that he would need to be with his mother during her surgery because his sister could not be with her. Chappell was absent on October 2 and 3, 2006. He left a voice message on Gordon Bond's phone on both days

to inform him that he would be absent. However, Gordon Bond was out of town that week.

On October 4, 2006, Al Collins, the plant manager, and Scott Williams, who was acting as fabrication department supervisor in Gordon Bond's absence, met with Chappell regarding his absences on October 2 and 3. Collins asked Chappell if he understood the attendance policy and reminded him that failure to call in and speak to his supervisor before 8 a.m. on the day he would be absent was a violation of the policy. Chappell said he understood, but he argued that Gordon Bond had given him permission to leave a message rather than speak to him directly. Even so, Chappell was assessed three points for each day that he failed to talk to his supervisor, which brought his total number of attendance points to seven. Pursuant to the attendance policy, he was suspended for three days. Chappell then asked for a Certificate of Health Care Provider form, which Cyndi Bond provided him that afternoon. Later that day, Collins asked Gordon Bond whether he told Chappell that he could leave a message on days he would be absent; Bond said he did not give Chappell permission to leave a message. As a result, Collins upheld the three-day suspension.

Bilco received FMLA documentation from Dr. Wiggins, which stated that Chappell would need to take time off intermittently between October 2 and October 30, 2006, to drive his mother to followup appointments and assist in her care. On November 10, 2006, Cyndi Bond provided Chappell with another Certificate of Health Care Provider form and asked him to have it completed since the first form only accounted for FMLA leave through October 30, 2006. Chappell returned the completed form on December 4, 2006. On the form, Dr. Sunil Gera, a pain management specialist, stated that Chappell would need to take off work intermittently to transport his mother to and from doctors appointments. At the bottom of the form, Chappell wrote that he needed to be off for "transportation and care after my mothers [sic] appointments." (Def.'s Ex. 12.)

3

Between October 2006 and March 2007, Chappell's total number of attendance points dropped to three based on thirty-day periods of time without excessive absences.[1] In April 2007, Chappell was assessed two attendance points, which took his total to five. Pursuant to the attendance policy, Chappell received a written warning. In May 2007, his total number of points dropped from five to four. In June, it dropped from four to three.

Chappell was absent from work on July 18 and 19, 2007. He called Gordon Bond on both days and spoke with him. The absences were marked as "personal business," and he was assessed two points pursuant to Bilco's attendance policy. On July 20, 2007, Chappell went to Cyndi Bond's office and said he should receive FMLA for the absences because he took off of work to care for his mother. Gordon Bond, Cyndi Bond, and Al Collins met with him on July 21, 2007, and explained that Chappell would be suspended because he had another occurrence within ninety days of receiving a written warning unless he could provide documentation by July 24, 2007, that the absences were FMLA-related. Collins reminded Chappell that, based on the Certificate of Health Care Provider form, Chappell's FMLA leave was limited to providing transportation for his mother to and from doctors appointments. Chappell offered no evidence that his mother had a doctor's appointment on either day. He did request a new Certificate of Health Care Provider form. Chappell later stated that he had taken off of work to provide care for his mother after she attended a funeral of a friend. On July 24, 2007, Collins explained to Chappell that he would be suspended for three days but that if he later provided documentation indicating that the absences were FMLA-related, the points for the absences would be waived and Chappell's lost wages would be reimbursed. On July 25, 2007,

---

[1]In February, Chappell took FMLA leave for a period of time. No points were added to or deducted from his total during that month.

Cyndi Bond gave Chappell the Certificate of Health Care Provider form that he had requested. Chappell was suspended from July 25 to July 27, 2007.

On July 31, 2007, Collins, Gordon Bond, and Cyndi Bond met with Chappell again to explain that he was only authorized to take FMLA leave to transport his mother to and from doctors' appointments. They also told him that, if possible, he must come to work before and after the appointments. The next day, Cyndi Bond contacted Dr. Gera's office to request information about Chappell's mother. An employee in Dr. Gera's office told Bond that Chappell's mother would need help after her appointments because the procedure Dr. Gera was performing limited her ability to move. The employee also told Bond that Chappell's mother was scheduled for an appointment at 12:30 p.m. on August 2, 2007. Chappell's shift at work was scheduled to begin at 6:30 a.m.

On August 2, 2007, Chappell missed an entire day of work. He was assessed one point for failing to come to work before the appointment. Chappell told Collins that the appointment began at 8 a.m. Because the absence constituted an occurrence within 120 days of a prior suspension, on August 10, 2007, Chappell's employment was terminated.

**II.**

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

If the moving party carries its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

### III.

Under the FMLA, there are two types of claims: "(1) 'interference' or '(a) (1)' claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA and (2) 'retaliation' or '(a)(2)' claims in which the employee alleges that the employer discriminated against him for exercising his FMLA rights." *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (quotation omitted) (citing 29 U.S.C. § 2615(a)(1)-(2) (2006)). Chappell alleges that Bilco both interfered with his rights under the FMLA and retaliated against him for filing an FLSA lawsuit in 2005. Both parties contend that there is no genuine dispute of material fact on the interference claim, and they seek summary judgement with respect to that claim. Bilco also seeks summary judgment with respect to the plaintiff's other claims.

**A.   FMLA Interference Claim**

Chappell and Bilco have filed cross-motions for summary judgment on the FMLA interference claim. An employer is prohibited from interfering with, restraining, or denying an employee's exercise of or attempted exercise of any right contained in the FMLA. 29 U.S.C. §

2615(a)(1). Interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA . . . ." 29 C.F.R. § 825.220(b) (2006). To state a claim for interference under the FMLA, "an 'employee must show . . . that he . . . was entitled to the benefit denied.' " *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050-51 (8th Cir. 2006) (quoting *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003)).

### 1. Interference With Authorized Leave

First, Chappell alleges that Bilco interfered with his FMLA rights in October 2006 when it assessed six attendance points against him and suspended him for three days. Bilco does not deny that Chappell's absences on October 2 and 3 were FMLA-related. Rather, it contends that Chappell was disciplined for reasons unrelated to his FMLA request—namely, that he violated the company's call-in policy when he left messages for Gordon Bond on both days he was absent but did not speak to Bond directly.

The Eighth Circuit has held that "an employer may terminate an employee on FMLA leave if [he] fails to comply with the employer's call-in requirement." *Thompson v. CenturyTel of Central Ark., LLC*, No. 09-3602, 2010 WL 4907161, at *4 (8th Cir. Dec. 3, 2010) (citing *Bacon v. Hennepin Cnty. Med. Ctr.*, 550 F.3d 711, 715 (8th Cir. 2008)). A call-in policy is permissible under the FMLA. The regulations specifically provide that "[a]n employer may require an employee on FMLA leave to report periodically on the employee's status and intent to return to work." 29 C.F.R. § 825.309(a). Chappell does not dispute that he failed to comply with Bilco's formal call-in requirement. Rather, he contends that Gordon Bond, his supervisor, told him that he could leave a message on days that he was absent, in violation of the policy. Even if that allegation is true, it is

not material to Chappell's interference claim. After suspending Chappell, Al Collins spoke with Gordon Bond, who denied giving Chappell permission to leave him a message on days that he would be absent. Collins believed Bond and upheld the suspension. Chappell offers no evidence that Collins would have reached a difference conclusion and sided with Chappell if Chappell's absences had not been FMLA-related. Because Bilco's reason for suspending Chappell—Chappell's violation of the company's call-in policy—was unrelated to his FMLA leave, the suspension did not interfere with Chappell's FMLA rights.

### 2. Interference With Leave to Care for Mother on July 18 and 19, 2007

Chappell also argues that Bilco interfered with his FMLA rights by denying his request for leave to care for his mother after she attended a funeral in July 2007. Bilco contends that it did not violate Chappell's rights because Chappell was not entitled to leave under the FMLA, and even if he was entitled to leave, he failed to provide adequate notice of the reason for the leave request.

Under the FMLA, leave may be taken intermittently in order to care for a parent's serious health condition "when medically necessary." 29 U.S.C. § 2612(a)(1)(C); *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86, 122 S. Ct. 1155, 1160, 152 L. Ed. 2d 167 (2002) ("Leave must be granted, when medically necessary, on an intermittent or part-time basis.") (internal citation omitted). A "serious health condition" occurs under the regulations when the family member suffers an "illness, injury, impairment, or physical or mental condition" that requires "inpatient care" or "continuing treatment" by a healthcare provider. 29 C.F.R. § 825.114(a). A family member has a serious health condition involving continuing treatment if the person experiences "[a] period of incapacity or treatment for such incapacity due to a chronic serious health condition." 29 C.F.R. 825.114(a)(2)(iii). To prove that he was entitled to FMLA leave, "[t]he employee must show that

8

[his] family member suffered a serious health condition and that [his] absence was attributable to the family member's serious health condition." *Caldwell v. Holland of Texas, Inc.*, 208 F.3d 671, 674 (8th Cir. 2000).

Chappell alleges that he missed work on July 18 and 19, 2007, to care for his mother, who is a diabetic, because she was emotionally distraught after attending a funeral and was having problems regulating her blood sugar. His testimony is as follows:

> Q. What kind of problems was your mother having?
> A. I couldn't get her sugar right.
> Q. Had she been to her friend's funeral?
> A. Yes.
> Q. Was she upset emotionally speaking?
> A. Yeah. That's pretty much what it had been.
> Q. In terms of checking her blood sugar, is it important that blood sugar be controlled for her?
> A. Yes.
> Q. Was she doing what she needed to do to control that?
> A. Yes. I went around talking to her, yes, trying to get her calmed down.
> Q. That's what y'all were trying to do?
> A. Yes.
> Q. With respect to being upset, how was that impacting her ability to kind of check her blood sugar and do the kind of eating she needed to do to control her blood sugar those two days?
> A. I don't recall. We just stayed with her with ice.
> Q. Kept her what?
> A. With ice and whatever my sister and them decided upon. It was shocking to me too.
> Q. Y'all did not take her to the doctor those two days?
> A. No, because my sister and them was there after and during the funeral. They pretty much knew something about it.
> Q. Were you providing emotional comfort and support to your mother?
> A. Yes.

(Pl.'s Ex. C, Chappell Depo. 58:20 – 59:21). Although Chappell testified that his mother's blood sugar was not at the proper level, he offers no evidence that the changes in her blood sugar constituted a "serious health condition" under the FMLA or that he was needed to provide physical

9

or psychological care for her as a result of her diabetes. To fall under the FMLA's protection, the plaintiff is required to present evidence that he was needed to care for his mother's basic medical, hygienic, psychological, or safety needs and that he had to do it because she could not. *Lane v. Pontiac Osteopathic Hosp.*, No. 09-12634, 2010 WL 2558215, at *4-5 (E.D. Mich. Jul. 21, 2010) (cleaning flooding in mother's basement was not medically necessary because there was no evidence that his mother's hepatitis was in danger of being aggravated if the employee did not immediately clean it up). To the extent that Chappell alleges that he was providing his mother with physical and psychological care, he has failed to establish that such care on that day was medically necessary. In fact, he testified in his deposition that his mother was doing what she needed to do to control her blood sugar and that his sister and others were present and available to care for his mother. Based on that evidence, no reasonable jury could conclude that it was necessary for Chappell to provide care for his mother on July 18 and 19, 2007, as a result of a serious health condition.

Even if Chappell was needed to care for his mother on those days, Bilco did not interfere with Chappell's FMLA rights. Before an employer's obligations under the FMLA are triggered, the employee must give notice of his need for FMLA leave. *Phillips*, 547 F.3d at 909. "At a minimum an employee must give 'at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave.'" *Sanders v. May Dep't Stores Co.*, 315 F.3d 940, 944 (8th Cir. 2003) (quoting 29 C.F.R. § 825.302(c)). What is sufficient notice to the employer, both in terms of the timing and content, will depend upon the facts and circumstances of each individual case. *Scobey v. Nucor Steel-Ark.*, 580 F.3d 781, 787 (8th Cir. 2009) (citing 29 C.F.R. § 825.303(b)).

Chappell notified Cyndi Bond on July 20, 2007, that he was seeking FMLA leave for his absences on July 18 and 19 to care for his mother. Chappell argues that, by informing Bilco that he

wanted FMLA leave for his absences, he satisfied his notice requirement. However, "[i]t is notice of the qualifying reason for leave, and not notice of the FMLA basis for that leave, that must be communicated" to the employer. *Slaughter v. Am. Bldg. Maint. Co. of N.Y.*, 64 F. Supp. 2d 319, 325 (S.D.N.Y. 1999). Ultimately, the employee must give the employer enough information for the employer to reasonably conclude that an event described in the FMLA has occurred. *Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2005). Although Chappell informed Bilco that he had to miss work to care for his mother, he did not provide notice of the potentially FMLA-qualifying reason for his absence—her diabetes. In fact, Chappell provided so little information to Bilco that the employer logically assumed that Chappell had been absent to take his mother to a doctors appointment related to her hip problem, and Bilco requested documentation of the appointment. Bilco had no reason to believe that Chappell's mother suffered from any other serious health condition that required Chappell's care.[2]

### 3. Interference With Leave the Morning Before Doctors Appointment

Finally, Chappell contends that Bilco interfered with his FMLA rights by assessing one attendance point against him on August 2, 2007, when he took time off from work to take his mother to a doctors appointment. Bilco argues that it did not give Chappell an attendance point for taking his mother to the doctor; rather, it assessed the point against Chappell because he did not come into

---

[2] Bilco argues that the certification Dr. Gera provided constitutes "negative certification" and that Bilco could rely on it to determine that Chappell's actions were not FMLA-qualifying. However, the absence of any certification that the employee requires leave beyond that already approved by the employer is not equivalent to an explicit certification that states that the employee does not require any absence from work due to his mother's condition. *See, e.g.*, *Fritz v. Phillips Serv. Indus., Inc.*, 555 F. Supp. 2d 820, 824-25 (E.D. Mich. 2008). "Defendant's attempted expansion of the 'negative certification' principle is not supported by existing case law or statute." *Id.* at 825.

work before the appointment. Chappell's shift began at 6:30 a.m. on August 2, 2007. When asked about what he did that morning, Chappell testified:

> Q. You're saying that on August 2nd you had to go take care of your mother? You had to go cook her meals for her?
> A. Yes, I would say.
> Q. What time did your shift start on August 2nd?
> A. My shift started at 6:00, 6:30.
> Q. In the morning?
> A. Yes.
> Q. What time did you go pick your mother up to go take her to the doctor?
> A. I don't recall the time I had to take her in.
> Q. You believe that before you took your mom to the doctor you went and cooked her breakfast and got her dressed and did all of that kind of stuff?
> A. Pretty much cover for her, yes.
> Q. How did your mother take care of herself on normal days?
> A. I would have my niece to come by.
> Q. Your niece went by every day?
> A. I wouldn't say every day.
> Q. Your mother was able to take care of herself, wasn't she?
> A. Not as much. Just some.
> Q. Was she able to get dressed?
> A. Yes.
> Q. Was she able to cook meals for herself?
> A. No. That's too much standing.

(Pl.'s Ex. C, Chappell's Depo. 48:4 – 49:17.) "[T]he FMLA does not provide leave to cover any activity intended to assist a family member." *Taylor v. Odom's Tenn. Pride Sausage, Inc.*, No. 4:08CV02833, 2010 WL 892075, at *7 (E.D. Ark. Mar. 8, 2010). Based on Chappell's own testimony, his mother did not need constant care, and she was able to dress herself. Although Chappell testified that his mother could not cook for herself and that he made breakfast for her the morning of August 2, he has not offered any evidence that suggests it was medically necessary for him to do so. On days when Chappell worked, he did not make breakfast for his mother. Thus, Bilco did not violate the FMLA by assessing Chappell one attendance point when he failed to go to

work before his mother's appointment on August 2.

**B.    FMLA Retaliation Claim**

Bilco is entitled to summary judgment on Chappell's retaliation claim for much the same reason. Under the retaliation theory, an employer may not consider "an employee's use of FMLA leave as a negative factor in an employment action." *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006) (quoting *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002)). An employee can prove retaliation through circumstantial evidence using the *McDonnell Douglas* burden-shifting analysis. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002). First, to establish a *prima facie* case of retaliation, Chappell must show (1) that he exercised his FMLA rights; (2) that he suffered an adverse action subsequent to this activity; and (3) that there was a causal link between the protected activity and the adverse action. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973)). Upon this showing, the burden shifts to Bilco to present a legitimate, non-discriminatory reason for Chappell's termination. *Hite*, 446 F.3d at 865. Once Bilco provides such a reason, the burden shifts back to Chappell to demonstrate that the stated reason was merely a pretext for retaliation. *Id.* The employee must present evidence that "(1) creates a question of fact regarding whether [the defendant's] reason was pretextual and (2) creates a reasonable inference that [the defendant] acted in retaliation." *Id.* (quoting *Smith*, 302 F.3d at 833).

Here, Chappell alleges that he exercised his rights under the FMLA when he filed a lawsuit against Bilco in August 2005. After that time, Chappell suffered an adverse employment action: his employment was terminated in 2007. As evidence of a causal link between the lawsuit and Chappell's subsequent termination, Chappell proffers the following: Collins once asked him if he

13

was the employee who sued the company; he was moved to a new machine in December 2006;[3] his supervisor Gordon Bond lied to Collins when he denied telling Chappell that he could call in and leave a message on days he was absent, in violation of the company's new attendance policy; and he was assessed six points and suspended for violating the call-in policy within two months of settling his claims against Bilco.

Even if Chappell established a *prima facie* case of retaliatory discharge based on this evidence, his claim would still fail because he has not demonstrated that Bilco's non-discriminatory reason for terminating his employment—violating the company's attendance policy—is pretext for retaliation. *See, e.g.*, *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 711 (7th Cir. 2002) (finding that an employer who fired an employee for failing to follow its call-in policy was entitled to summary judgment on the employee's retaliation claim).

> An employee can prove pretext in several ways. First, the employee can show that the employer's proffered explanation has no basis in fact. . . .
>
> Also, the employee can prove pretext by showing that the employer varied from its normal policy or practice to address the employee's situation. . . .
>
> If the employee presents strong evidence of a *prima facie* case, then such evidence may establish pretext.

*Hite*, 446 F.3d at 867. Generally, "the mere coincidence of timing" is insufficient to establish a case of retaliatory discharge. *Nelson v. J.C. Penney Co., Inc.*, 75 F.3d 343, 346-47 (8th Cir. 1996).

Bilco terminated Chappell's employment pursuant to the company's attendance policy for absences that were not covered by the FMLA. Even if Gordon Bond told Chappell that he could call in and leave a message and lied to Collins about it later, Chappell offers no evidence that Bond's

---

[3] Chappell's pay and employment benefits were not affected by the change.

behavior was related to Chappell's earlier FMLA claim against the company. Bilco points out that at least three other employees at Bilco have been similarly disciplined for violating the new attendance policy. Because Chappell offers no evidence of pretext, Bilco is entitled to summary judgment on Chappell's retaliation claim.

## IV.

Chappell also alleges that he was discriminated against based on his race in violation of 42 U.S.C. § 1981 and retaliated against for previous complaints of race discrimination in violation of § 1981 and the Arkansas Civil Rights Act ("ACRA"), Ark. Code Ann. § 16-123-108.[4]

### A.     Section 1981 Disparate Treatment Claim

In analyzing Chappell's disparate treatment claim, the Court uses the familiar *McDonnell Douglas* burden-shifting framework. *See Putnam v. Unity Health Sys.*, 348 F.3d 732, 735 n.2 (8th Cir. 2003) (applying *McDonnell Douglas* to a section 1981 claim). Chappell must first establish a prima facie case of discrimination. To establish a prima facie case of discrimination, Chappell must show (1) that he is a member of a protected class, (2) that he was meeting his employer's legitimate job expectations, and (3) that he suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises. *Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018, 1021-22 (8th Cir. 1998).

---

[4]Bilco first argues that the plaintiff's ACRA claim is time-barred pursuant to Arkansas Code section 16-123-107, which states that "[a]ny action based on employment discrimination in violation of . . . this section shall be brought within one (1) year after the alleged employment discrimination occurred . . . ." Ark. Code Ann. § 16-123-107(c)(3) (2009). However, the plaintiff's ACRA claim arises under section 108(a), which does not include a limitations period. *See, e.g.*, *Inscore v. Doty*, No. 4:08CV00337, 2009 WL 2753049, at **2-3 (E.D. Ark. Aug. 27, 2009) (recognizing plaintiff's argument that a three-year limitations period should apply to claims under section 108 and denying defendant's motion for summary judgment).

Without contesting the first three elements of the prima facie case, Bilco argues that discrimination was not a motivating factor in Chappell's termination. Chappell argues to the contrary.

First, Chappell alleges that he was treated less favorably than nine similarly situated Caucasian employees who were not assessed attendance points for their absences. (Pl.'s Exs. O-W.) "The test to determine whether individuals are similarly situated 'is rigorous and requires that the other employees be similarly situated in all relevant respects before the plaintiff can introduce evidence comparing herself to the other employees.' " *Chism v. Curtner*, 619 F.3d 979, 984 (8th Cir. 2010) (quoting *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008)). To support his allegation that he and the nine Caucasian employees are similarly situated, Chappell provides the attendance calendars of those nine employees, which indicate the days that the employees were absent from work. The calendars do not indicate, however, whether these absences were FMLA-related or covered by any other leave policy at Bilco. Chappell offers nothing to show that these nine employees were similarly situated.[5]

Chappell also offers evidence from his 2006 deposition in which he alleged that his coworkers and supervisors frequently made racial comments about African Americans. (Pl.'s Ex. G, Chappell Depo. 115:11-17, 116:7-23, 128:4-8.) Specifically, Chappell alleged that his supervisor Gordon Bond referred to African Americans as "lazy," "worthless," and "just here to get paid." (*Id.* at 115:11-17.) Absent a causal link between racial comments and the adverse employment

---

[5]The plaintiff also provides a personnel data sheet for several of the employees as well as documents from the personnel file of Ralph Guthrie. None of these documents indicate, however, that the employees were similarly situated to Chappell but received different treatment. In fact, the personnel sheets indicate that several of the employees were terminated—or voluntarily resigned—after violating Bilco's attendance policy.

decision, Bond's comments are best classified as stray remarks or statements unrelated to the decisional process. *See, e.g., Simmons v. Oce-USA, Inc.*, 174 F.3d 913, 916 (8th Cir. 1999). Under the *McDonnell Douglas* analysis, "stray remarks, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process are insufficient to establish a *prima facie* case." *Gold Star Taxi & Transp. Serv. v. Mall of Am. Co.*, 987 F. Supp. 741, 746 (D. Minn. 1997). Here, Chappell offers no evidence that Bond's comments were anything more than stray remarks. In fact, in his 2009 deposition, Chappell testified that his coworkers had stopped using racial slurs and had changed the way they felt about race issues. (Pl.'s Ex. C, Chappell Depo. 61:3-7.)

Finally, Chappell alleges a pattern or practice of discrimination at Bilco in an effort to establish his *prima facie* case of discrimination.[6] "While pattern-or-practice evidence may be helpful in the context of an individual disparate treatment claim to assist in establishing a prima facie case or show pretext, such evidence, standing alone, would not enable [Chappell] to establish that [Bilco terminated him] because of his race." *Daniels v. Washington Grp. Int'l*, No. 5:06CV00213, 2008 WL 268322, at *4 n.6 (E.D. Ark. Jan. 29, 2008). For these reasons, Bilco is entitled to summary judgment on Chappell's disparate treatment claim.

**B.     Section 1981 and ACRA Retaliation Claims**

There is no genuine issue of material fact regarding Chappell's race retaliation claims. As with the FMLA retaliation claim, Chappell offers no evidence of a causal link between his 2005 lawsuit against Bilco and his subsequent termination. Nor is there any evidence that Bond would

---

[6] He offers the 2008 deposition of Nelson Harris, an African American who was denied employment at Bilco, and the EEOC complaint of Jeffrey Miles, an African American employee who was terminated. He also presents evidence that fewer than five of the ninety to one hundred employees at Bilco's Truman facility are African American; 7.5 percent of Poinsett County, where the Truman plant is located, are African American.

have been motivated to lie to Collins by Chappell's earlier action against the company. Thus, Bilco is entitled to summary judgment on these claims.

## CONCLUSION

For the reasons stated above, Chappell's motion for partial summary judgment is DENIED. Bilco's motion for summary judgment is GRANTED.

IT IS SO ORDERED this 3rd day of January, 2011.

*/s/ J. Leon Holmes*
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE